UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOSEF KHFLOM GHARZA,

                Petitioner,

    v.

TODD BLANCHE, *et al.*,

                Respondents.

Case No. C26-1702-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Yosef Khflom Gharza is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, asserting his immigration detention is unconstitutional and violates federal regulations. *See generally* Dkt. 1.  He seeks release from custody and related injunctive relief.  *Id.* at 27-28. Government Respondents filed a timely return (Dkt. 8), together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Karl Douglas (Dkt. 9) ("Douglas Decl."), and their counsel, Jennifer Wong (Dkt. 10) ("Wong Decl.").  Petitioner filed a timely traverse in reply.  Dkt. 12.

Having considered the parties' submissions and the governing law, the Court GRANTS the petition in part and ORDERS that Petitioner be released from immigration detention within twenty-four (24) hours. Remaining claims and requested relief are discussed below.

## I.   BACKGROUND

Petitioner first entered the United States on January 15, 2020, when he applied for admission at the Laredo, Texas Port of Entry. Douglas Decl., ¶ 4. He was initially processed for expedited removal but claimed a fear of returning to Eritrea. *Id.*; *see* Wong Decl., ¶ 2, Ex. 2 (Notice of Expedited Removal). After an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture, he was placed in (non-expedited) removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"). *See* Wong Decl., ¶ 2, Ex. 3 (Notice to Appear).

On August 24, 2020, Petitioner's application for asylum was denied and an immigration judge ordered his removal from the United States. Douglas Decl., ¶ 6; *see* Wong Decl., ¶ 2, Ex. 4 (Order). Petitioner did not appeal the order of removal. Douglas Decl., ¶ 6. Petitioner was thereafter detained until January 26, 2021, at which point he was released from detention on an Order of Supervision ("OSUP") because ICE was unable to remove Petitioner to Eritrea. *Id.* ¶ 13; *see* Wong Decl., ¶ 2, Ex. 5 (OSUP).

The record is silent as to whether ICE sought to enforce Petitioner's removal order after his 2021 release from custody and leading up to ICE's renewed efforts in 2025, but on May 22, 2025, ICE sent a Travel Document Request to the Eritrean Embassy in Washington, D.C. Douglas Decl., ¶ 18.

On July 16, 2025, ICE arrested Petitioner after he arrived at his scheduled check-in appointment at the Seattle Enforcement and Removal Operations ("ERO") office. *Id.* ¶ 19.

Officer Douglas asserts that Petitioner's OSUP was revoked "due to changed circumstances." *Id.* Petitioner was subsequently served with a Notice of Revocation of Release which contains language asserting that "ICE determined that Petitioner can be removed from the United States pursuant to the August 24, 2020, order of removal." *Id.*; *see* Wong Decl., ¶ 2, Ex. 6 (Notice of Revocation). Petitioner was transferred to the NWIPC, where he remains detained. Douglas Decl., ¶ 19; Dkt. 1 at 4.

On May 18, 2026, Petitioner filed the instant petition, challenging his detention at the NWIPC. *See generally* Dkt. 1. He seeks release from immigration detention and various forward-looking injunctive relief related to future redetention and third-country removal. *Id.* at 27-28.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

//

## III.   DISCUSSION

Petitioner first asserts that his current detention has become unlawfully indefinite under the framework articulated in *Zadvydas*.  Dkt. 1 at 7-8, 22.  He additionally challenges the manner in which ICE redetained him, arguing that his redetention violates both his procedural due process rights under the guidance of *Mathews v. Eldridge*, 424 U.S. 319 (1976), as well as implementing federal regulations.  *Id.* at 8-12, 22-24.  In addition to release, Petitioner also seeks injunctive relief (1) barring any future redetention without the Government first satisfying various criteria (*see id.* at 23), (2) barring his removal to a third country without due process (*see id.* at 24-25), and (3) barring his removal to a third country where he is likely to face imprisonment or punishment upon arrival (*see id.* at 25-27).

Respondents contend that Petitioner's claim under *Zadvydas* fails because his removal to Eritrea is significantly likely to occur in the reasonably foreseeable future.  Dkt. 8 at 1-2, 6-8.  As for Petitioner's claims regarding the lawfulness of his redetention, Respondents agree that *Mathews* applies, but argue they complied with federal regulations and that Petitioner's detention otherwise comports with due process.  *Id.* at 8-11.  Finally, Respondents argue Petitioner's request for injunctive relief related to his future redetention and third-country removal is speculative and unripe.  *Id.* at 12-13.

For the following reasons, *Zadvydas* compels Petitioner's release from immigration custody.  The Court therefore does not reach Petitioner's claims challenging his redetention under *Mathews* or federal regulations.  Remaining requested relief is addressed below.

### A.   Indefinite detention under *Zadvydas*

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings.  *See* 8 U.S.C.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

§§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *See id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. "After this six-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [G]overnment must respond with evidence sufficient to rebut that showing." *Id*. If the Government is unable to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Respondents concede that the six-month presumptively reasonable period to detain Petitioner has passed. Dkt. 8 at 7. The evidence shows that Petitioner was first detained for approximately four months between September 23, 2020, and January 26, 2021, and his current detention is approaching eleven months. Douglas Decl., ¶¶ 6, 13, 19.

Petitioner has also shown good reason to believe there is no significant likelihood of removal to Eritrea in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. First, his

order of removal has been final for nearly six years, and the Government has already once been unable to secure his removal to Eritrea.  Dkt. 1 at 22.  Further, Petitioner asserts that he "has had virtually no contact with his deportation officer and no contact with his embassy."  *Id.*  Petitioner also asserts that "the State Department has designated Eritrea as an uncooperative country that does not timely issue travel documents for its citizens."  Dkt. 1 at 7 (citing Dkt. 1-1 at 2).

Respondents respond that "Petitioner's detention continues to be constitutional because there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future."  Dkt. 8 at 7.  Respondents point to ERO's travel document request submitted in 2025 and assert that "[Removal and International Operations] provided a [May 9, 2026] update that Petitioner's case has been presented electronically to the Department of State for immediate attention regarding his travel document to Eritrea."  *Id.* at 5, 8.  This update, combined with the fact that "the Government of Eritrea has issued travel documents for Eritreans since the submission of Petitioner's TDR," gives Respondents reason to believe it is significantly likely that Petitioner will be removed in the reasonably foreseeable future.  *Id.*

The Court does not find this limited information sufficiently rebuts Petitioner's showing.  *Zadvydas*, 533 U.S. at 701.  Respondents have now been waiting for over one year for the Eritrean Embassy to issue the travel document.  While Respondents assert that they have received updates from the Embassy, neither those updates, nor the information contained in those updates, are before the Court.  And the relevance of the fact that Petitioner's document request has been presented to the State Department "for immediate attention" is not intuitive without additional information.  Respondents do not explain what "immediate attention" means for someone in Petitioner's position or provide additional context that would give the Court any sense of when Respondents expect those documents to issue, what timelines for similarly

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

situated Eritreans have looked like, and how much time Respondents would need to effectuate Petitioner's removal once the documents are eventually received. Moreover, the fact that Eritrea has issued travel documents for Eritreans since Petitioner's application was submitted (*see* Dkt. 8 at 8) is meaningless as it relates to Petitioner's removal—particularly in light of the fact that Respondents do not respond to Petitioner's assertion that Eritrea has been characterized as uncooperative with U.S. immigration efforts.

At most, the evidence shows that Respondents have been waiting nearly thirteen months for travel documents and that those documents could issue in the future. The Court is not persuaded that such vague information supports Respondents' argument that removal is significantly likely or that it will happen in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.") (citations omitted).

Accordingly, on this record, the Court finds that Petitioner has shown that there is no significant likelihood of removal in the reasonably foreseeable future, that his detention has therefore become effectively indefinite under *Zadvydas,* and he is entitled to release.

**B.      Remaining Claims and Requested Relief**

The Court does not reach Petitioner's remaining claims because the requested relief is duplicative of that ordered under *Zadvydas* above. The Court therefore turns to Petitioner's request for injunctive relief.

Petitioner asserts that Respondents violated his right to due process and failed to comply with their own regulations in redetaining him. Dkt. 1 at 8-13. Accordingly, Petitioner seeks two related orders governing any future redetention. First, Petitioner requests an order prohibiting

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

the Government from redetaining him without first "holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances." *Id.* at 28.  In addition, Petitioner seeks an order prohibiting the Government from redetaining him without first: (1) obtaining a valid travel document to Eritrea; (2) providing that document to him and his counsel; (3) offering him the opportunity to leave on his own within two months; and, (4) if he does not leave, permitting the Government to redetain him provided they have already made concrete arrangements for him to be put on a flight to Eritrea in the reasonably foreseeable future.  *Id.*

Petitioner also seeks injunctive relief barring his removal to a third country, arguing that the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), the Administrative Procedures Act ("APA") and "implementing regulations" require notice and an opportunity to respond before the Government can pursue third-country removal.  *Id.* at 24-25.  Finally, Petitioner also seeks injunctive relief barring his removal to a third county to the extent that he is likely to face imprisonment or punishment upon his arrival.  *Id*. at 27.

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).

Petitioner's factual development and related arguments in support of his request for injunctive relief are largely cursory.  *See* Dkt. 1 at 23-27.  As for his future redetention,

Petitioner asserts that the Government's "policy to round up as many noncitizens as possible" shows it is significantly likely that the Government will seek to redetain him in the future. *Id.* at 23 (citation omitted). Respondents argue that Petitioner's requested relief "would improperly impose procedural requirements that lack precedent or authority." Dkt. 8 at 13. Similar to his argument regarding third-country removal below, Petitioner does not meaningfully engage with the *eBay* factors or show a "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003). Beyond asserting in his petition that he was detained without notice and an opportunity to respond, the limited factual record does not adequately show that Petitioner faces the risk of similar unlawful redetention in the future after he is released under this Order. Petitioner's request for injunctive relief related to his future redetention is denied.

As for his possible third-country removal, Petitioner challenges DHS's third-country removal practices generally, then summarily concludes that he meets the requisite elements for injunctive relief. *See* Dkt. 1 at 25, 27. Other than a general recitation of the elements, Petitioner does not show that it is reasonably likely that Respondents will seek to remove him to a third country without due process or as part of a punitive policy or practice. As Respondents assert, the Government is exclusively focused on removal to Eritrea. *See* Dkt. 8 at 11-12 ("ICE does not presently intend to remove Petitioner to a third country and is currently solely seeking to remove Petitioner to Eritrea."); Douglas Decl., ¶ 25 ("ERO does not intend to remove Petitioner to a third country."). The Court, under these circumstances, finds Petitioner's request for injunctive relief relating to third country removal premature and properly denied without prejudice. *See, e.g., Ali v. Bondi,* C26-73-MLP, 2026 WL 657471, at *3 (W.D. Wash. Mar. 9, 2026); *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025).

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 1) in part and ORDERS that Petitioner be RELEASED from immigration detention within twenty-four (24) hours on conditions of supervision consistent with those in place at the time of his redetention. Respondents shall file a certification with the Court within forty-eight (48) hours that Petitioner has been released.  Petitioner's remaining claims are denied as MOOT.  Petitioner's requests for injunctive relief are DENIED.

Dated this 10th day of June, 2026.


S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10